# 9th Circuit asked to stop USDA predator killing

By SCOTT SONNER Associated Press The Denver Post
Posted:

DenverPost.com

RENO, Nev.—Conservationists have appealed a federal judge's rejection of their lawsuit in Nevada aimed at shutting down a federal program that spends more than $100 million a year to subsidize the killing of coyotes, mountain lions and other predators that threaten livestock.

The appeal filed Thursday targets a ruling in March by U.S. District Judge Miranda Du, who dismissed most of the WildEarth Guardians lawsuit that claims the Depression-era program of the U.S. Agriculture Department is illegal because it relies on scientific and environmental data that is nearly two decades old.

Among other things, Du said the harm cited by the conservationists would not be alleviated by shutting down the Wildlife Services operation in Nevada—where 6,000 coyotes are killed annually and federal officials spend about $1.5 million a year—because the state has said it would carry out the killings itself.

Lawyers for WildEarth Guardians said in its appeal to the 9th Circuit Court of Appeals that Nevada doesn't have the resources to continue all the work.

A state wildlife official agreed.

"We wouldn't have the manpower," Nevada Department of Wildlife spokesman Chris Healy said Friday. "They are in some wild places in Nevada doing that kind of predator work where we have zero personnel. We already have a full plate."

The conservationists said the program that spent $127 million to exterminate more than 5 million animals in 2010 should be suspended nationally until USDA updates its scientific analysis that's based largely on an environmental impact statement conducted in 1994 when the program was much smaller.

In 1988, Wildlife Services spent $26 million to control 17 target species, compared to 2010 when it spent $126 million on a list of about 300 species, court documents state.

New research includes "scientific analysis on the critical ecological role of carnivores, the proven ineffectiveness of trapping and availability of non-lethal alternatives," group lawyer Ashley Wilmes wrote in the appeal. She also said recent studies show it is more cost effective to compensate livestock producers for losses than to pay for expensive methods, such as aerial gunning.

The nonprofit group based in Colorado has failed to win similar lawsuits during the past 20 years mostly because courts have ruled they lacked legal standing due to failure to demonstrate actual harm.

Judge Du concluded a Nevada member of the group, Don Molde, had in fact established actual harm as a result of a reduction in his ability to view coyotes, mountain lions and ravens. But she agreed with the government's argument that "there's no relief they can obtain that would redress their alleged injury."

Brian Collins, a Justice Department lawyer representing USDA, likened it to a case involving the Goat Ranchers of Oregon in 2010, when the 9th Circuit held that the Oregon Department of Fish and Wildlife would trap and kill cougars if federal officials didn't do the job.

"Nevada has unequivocally stated its intent to carry out its wildlife management activities regardless of whether it receives assistance from Wildlife Services," he said in court documents.

Du agreed, ruling that Molde's "injuries" would continue to occur as a result.

She based her conclusion on a 2010 letter from then-Nevada Department of Wildlife Director Kenneth Mayer who stated that without federal participation, "NDOW would, by statute, carry out the management of wildlife with existing personnel or contract the work to other capable entities."

Healy said that wasn't meant to suggest there would be no impact on predator management in Nevada.

Of the $1.5 million USDA spends on the program in Nevada, only about $300,000 to $400,000 annually goes to predator control aimed at protecting wildlife such as mountain lions feeding on mule deer herds or ravens ravaging sage grouse nests.

The state would continue to do its best to carry out that work with a portion of the money collected from big game tags because "we still have some statutory responsibilities we can't ignore," Healy said.

"But would we be able to fill the void? Not the whole void created by their actions," he said.