No. 13-16071

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

WILDEARTH GUARDIANS,

*Plaintiff-Appellant,*

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, ANIMAL AND PLANT HEALTH INSPECTION SERVICE*,*

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the District of Nevada
No. 2:12-cv-00716-MMD-PAL
Honorable Miranda M. Du, District Judge

---

**PLAINTIFF-APPELLANT'S REPLY IN SUPPORT OF
ITS MOTION REQUESTING JUDICIAL NOTICE**

---

Pursuant to Federal Rule of Evidence 201, Plaintiff-Appellant WildEarth Guardians ("Guardians") requested judicial notice of the newspaper article, *9th Circuit Asked to Stop USDA Predator Killing*, and the statements therein by Nevada Department of Wildlife ("NDOW") spokesman Chris Healy. See Exhibit 1 to its Motion for Judicial Notice. Guardians replies in support of that motion.

**I. This Court May Take Judicial Notice of the Newspaper Article and Fact that NDOW's Spokesperson Publicly Questioned NDOW's Ability to Take Over all of Wildlife Services' Activities in Nevada.**

Defendant-Appellee United States Department of Agriculture, Animal and Plant Health Inspection Service ("Wildlife Services") contends that this newspaper article is not an appropriate fact to be judicially noticed. See Federal Appellee's Response ("Resp.") at 5. Pursuant to FED. R. EVID. 201(b)(2), this Court can take judicial notice of adjudicative facts that are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Information in newspaper articles satisfies this test, when admitted for a non-hearsay purpose.[1] See Ritter v. Hughes Aircraft Co., 58 F.3d 454, 458-59 (9th Cir.1995) (court may take judicial notice of information in newspaper articles); U.S. v. Isaacs, 359 F. App'x 875, 877 (9th Cir. 2009); Dockray v. Phelps Dodge Corp., 801 F.2d 1149, 1152 n.3 (9th Cir. 1986) (taking judicial notice on appeal of newspaper articles concerning labor dispute); Peters v. Del. River Port Auth., 16 F.3d 1346, 1356 n.12 (3d Cir. 1994) (taking judicial notice of articles showing competition between state authorities).

"Out-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted." Anderson v. U.S., 417 U.S. 211, 219

---

[1] The fact that NDOW's spokesperson publicly questioned NDOW's ability to conduct all of Wildlife Services' activities in Nevada may also be accurately and readily determined from NDOW.

(1974). This newspaper article and the "fact" of Mr. Healy's statements that call into doubt Wildlife Services' interpretation of the Mayer Letter[2] are not hearsay because they are not offered for the truth of the matter asserted. See Isaacs, 359 F. App'x at 877 (district court did not err in taking judicial notice of newspaper article because the statements were not offered for the truth of the matter asserted). Instead, Guardians offers them to (1) to show that the Mayer Letter is not dispositive on the issue of redressability, in regards to the district court's refusal to allow jurisdictional discovery and (2) to rebut Wildlife Services' argument that it is unlikely that discovery would have uncovered any additional facts to dispute its interpretation of the Mayer Letter. These are non-hearsay purposes. Guardians does not submit the article to "prove" that NDOW cannot do Wildlife Services' job in Nevada, but only for the purpose of showing there is dispute as to whether NDOW could take over this work.[3]

This Court may therefore take judicial notice of the "fact" that Mr. Healy, on behalf of NDOW and in his capacity as NDOW spokesperson, spoke publicly to

---

[2] The "Mayer Letter" refers to the letter by NDOW Director Kenneth Mayer, which the district court found was dispositive as to the issue of redressability in dismissing Guardians' case for lack of standing.

[3] See, e.g., Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 178 n.18 (1988) (witness's out of court statement not hearsay, because it was not offered to prove the truth of the matter asserted, but "to contribute to a fuller understanding of the material the defense had already placed in evidence.").

3

the Associated Press about the Mayer Letter and questioned whether NDOW has the money and manpower to take over all of Wildlife Services' activities in Nevada. See Ex. 1 to Motion. Courts are free to take judicial notice of such public statements and information. See U.S. v. Thornton, 511 F.3d 1221, 1229 n.5 (9th Cir. 2008) (taking judicial notice of a Bureau of Prisons policy statement that was publicly available); N.M. ex rel. Richardson v. Bureau of Land Mgmt., 565 F.3d 683, 719 n.48 (10th Cir. 2009) (taking judicial notice of the existence and online availability of the Governor's press release).[4]

## II. The Fact of these Statements is Relevant to the Issue of Whether the District Court Abused its Discretion in Denying Discovery

Wildlife Services contends the article is not relevant to this Court's inquiry on appeal and therefore this Court should not take judicial notice of it. See Resp. at 3. FED. R. EVID. 401 states that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." This newspaper article and fact that NDOW's spokesperson publicly questioned NDOW's ability to take over all of Wildlife Services' Activities in Nevada are relevant evidence to show that

---

[4] See also Gonzalez v. Nat'l Westminster Bank PLC, 847 F. Supp. 2d 567, 569 n.2 (S.D.N.Y. 2012) ("Court may take judicial notice of publicly available information including newspaper articles and other public disclosures."); McLoughlin v. People's United Bank, Inc., 586 F. Supp. 2d 70, 73 (D. Conn. 2008) (taking judicial notice of the press releases of government agency).

the Mayer Letter is not dispositive on the issue of redressability and that discovery may have been uncovered facts demonstrating Guardians' standing to sue.

Wildlife Services first argues that the district court, in refusing to allow jurisdictional discovery, denied relief that was conditioned on events that never came to pass and this article does not have any tendency to make that fact more or less probable. See Resp. at 4. However, Wildlife Services misunderstands the reason for the district court's refusal to allow jurisdictional discovery. Because the district court found the Mayer Letter was *dispositive* of the redressability issue, it did not find that additional facts were needed to determine if Guardians' members' injuries were redressable. This article is relevant to the error of that conclusion.

In its Response to the Motion to Dismiss, Guardians established that whether NDOW could and would take over the entirety of Wildlife Services' activities in Nevada is a factual dispute warranting discovery. Guardians also filed a Motion for Jurisdictional Discovery, requesting the opportunity to conduct jurisdictional discovery to support its burden at the summary judgment stage *or* if the Court needed additional facts to rule on the motion to dismiss.[5] Clerk's Record ("CR") 27 at 1-2. Guardians sought to take discovery regarding the Mayer Letter and to subject Mr. Mayer's statement to cross-examination, explaining:

---

5   As this Court explained in Laub v. U.S. Dep't of Interior, "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." 342 F.3d 1080, 1093 (9th Cir. 2003) (quotation marks and citation omitted).

5

> [B]ecause Wildlife Services offers the Director's statement for the purpose of establishing the truth of that assertion, the statement is actually inadmissible hearsay. See FED. R. EVID. 801(c). This statement was not given under oath, the Director was not subject to cross-examination, and whether the statement was politically motivated is unknown. [] Guardians must be given an opportunity to depose the Director of NDOW and subject that statement to cross-examination. Whether NDOW would – and could – carry out the same work as Wildlife Services is disputed by Guardians and presents a factual dispute for which discovery and resolution is necessary. The NDOW letter of intent is not an undisputed fact that is dispositive of the Court's ultimate resolution of the redressability issue.

CR 27 at 8.

The district court found that whether NDOW actually had the funding or manpower to take over Wildlife Services' activities was not relevant, explaining: "plaintiff asserts that jurisdictional discovery may result in facts supporting Mr. Molde's research, but the Court disagrees. Nevada has the authority to implement predator damage management, and has indicated it will do so, with or without federal participation." Order, Excerpts of Record ("ER) at 14-15. The court stated that Nevada's "clear intent" to do so was "undisputed[]," and that, as a result of this clear intent and because both parties had requested extensions to the briefing schedule, Guardians' Motion for Jurisdictional Discovery was denied. ER at 15. This article is relevant evidence that the district court abused its discretion in finding that the Mayer Letter was dispositive of NDOW's "clear" intention to take over the entirety of Wildlife Services' activities in Nevada and that discovery could not be fruitful.

6

In its Answering Brief, Wildlife Services similarly contends that the Mayer Letter is dispositive of the redressability issue and that it is "unlikely that discovery would have uncovered any facts to establish standing." Ans. Br. at 19. The fact of Mr. Healy's statements in this newspaper article is relevant evidence to demonstrate that discovery may have resulted in evidence showing that NDOW has neither the money nor the manpower to take over the entirety of Wildlife Services' activities in Nevada.

Contrary to Wildlife Services' assertion, Mr. Healy's statements do not conflict with the Mayer Letter. Mr. Healy clarified NDOW's "responsibilities" mentioned in the Mayer Letter in the context of what the agency could *actually* do with the money and manpower that it has. Additionally, the existence of this public statement is "of the same type and taken from the same source" – NDOW – as Wildlife Services' own evidence regarding the redressability issue. See U.S. v. Esquivel, 88 F.3d 722, 726-27 (9th Cir. 1996) (taking judicial notice of census data submitted for first time on appeal, where it was taken from same source as data submitted by opposing party).

Finally, the timing of the article is unimportant because the issue is whether future discovery could uncover facts relevant to Guardians' standing. See FED. R. EVID. 201(d) ("The court may take judicial notice at any stage of the proceeding."); see also U.S. v. Astorga-Gonzalez, No. 12–10431, 2013 WL 6773667, at *1 n.2

7

(9th Cir. Dec. 24, 2013) (taking judicial notice of press release on appeal).

## III. Discovery Is Appropriate

Wildlife Services also argues against relevance because "to obtain the type of evidence presented in the article, [Guardians] would have to subpoena a Nevada state official for a deposition," who "would have to opine about future operational and budgeting decisions that might be made in the hypothetical scenario in which" federal involvement in Nevada predator damage management ceased. Resp. at 10-11. Wildlife Services uses NDOW's vague statement in the Mayer letter in an attempt to preclude review of its deficient National Environmental Policy Act analysis and then, remarkably, also seeks to prevent Guardians from questioning that statement. This would be a highly prejudicial and unjust result.

If the district court had allowed Guardians the opportunity for jurisdictional discovery, it could have deposed Mr. Mayer and subjected his statement to cross-examination. Mr. Mayer himself opined about a hypothetical scenario in which Wildlife Services no longer participated in predator damage management activities in Nevada. Further inquiry into NDOW's ability to carry out those activities is reasonable and necessary. Mr. Healy explained that the Mayer Letter "wasn't meant to suggest there would be no impact on predator management in Nevada" and NDOW would be unable to fill the "whole void" left by Wildlife Services' departure. See Ex. 1. Mr. Healy's statements provide good examples of relevant

8

and appropriate questions for the director of NDOW, whose vague statement in the Mayer Letter should be subject to discovery.

Wildlife Services cites Kyle Eng'g Co. v. Kleppe, 600 F.2d 226, 231 (9th Cir. 1979) for the general rule that "[h]eads of government agencies are not normally subject to deposition." Notably, in Kleppe, the district court allowed discovery, but ordered the head of the government agency to answer interrogatories in lieu of a deposition. See 600 F.2d at 231. Regardless of whether Guardians were to depose the director of NDOW, interrogatories and requests for production and admission could provide evidence to inform the court regarding Nevada's ability and willingness to conduct all of Wildlife Service's activities in Nevada. See id.

Moreover, "[a]n exception to this general rule exists concerning top officials who have direct personal factual information pertaining to material issues in an action and where the information to be gained is not available through any other source." Green v. Baca, 226 F.R.D. 624, 648 (C.D. Cal. 2005) (quoting Church of Scientology of Boston v. IRS, 138 F.R.D. 9, 12 (D. Mass. 1990). Given Wildlife Services' reliance on the Mayer Letter – which was provided directly to Wildlife Services as part of the NEPA process (see ER 182, 213) – as the basis for its Motion to Dismiss, discovery and possible deposition of Mr. Mayer or another state official in this case is both necessary and proper. See Myers v. FAA, No. 88-

7369, 1989 WL 150605, at *4 (9th Cir. Dec. 12, 1989) (holding that refusal to issue subpoena for Secretary of Defense was an abuse of discretion).

## CONCLUSION

For the foregoing reasons, Guardians requests this Court to take notice of Exhibit 1 to its Motion for Judicial Notice and the fact of the public statements therein for the limited purposes set forth above.

Respectfully submitted on March 10, 2014,

/s *Ashley D. Wilmes*
Ashley D. Wilmes
680 W. Hickory Street
Louisville, Colorado 80027
Tel. 859-312-4162
awilmes@wildearthguardians.org
Attorney for Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system, which will serve this document on all counsel of record in this case.

/s *Ashley D. Wilmes*
Ashley D. Wilmes